1

2

3

4

5

6

7

8                     IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RODNEY JEROME WOMACK,

11              Plaintiff,                No. 2:10-cv-2778 GEB DAD P

12        vs.

13   C. BAKEWELL et al.,                  ORDER AND

14              Defendants.               FINDINGS AND RECOMMENDATIONS

15   _____/

16            Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking

17   relief under 42 U.S.C. § 1983.  This matter is before the court on a motion for summary

18   judgment brought on behalf of defendants Bakewell, Bal, Deems, Duc, Nangalama, and Walker.

19   Plaintiff has filed an opposition to the motion, and defendants have filed a reply.  Plaintiff has

20   also filed an amended opposition to which defendants have filed another reply.  Finally, plaintiff

21   has filed a response to defendants' reply as well as several other motions.

22                              **BACKGROUND**

23            Plaintiff is proceeding on his original complaint against defendants Nurse

24   Bakewell, Dr. Bal, Chief Executive Officer ("CEO") Deems, Dr. Duc, Dr. Nangalama, and

25   Warden Walker.  Therein, plaintiff alleges as follows.  On February 13, 2009, U.C. Davis

26   orthopedic specialist Dr. Eric Giza performed ankle surgery on plaintiff.  When plaintiff woke up

1   from the surgery, Dr. Giza told him to elevate his ankle above his heart for the next three or four

2   days and stay off of his ankle during the same time period.  Dr. Giza also told plaintiff to

3   gradually start walking on his ankle with crutches as his pain would allow.  Dr. Giza emphasized

4   to plaintiff to proceed gradually to avoid re-injuring his ankle before the natural healing process

5   began.  (Compl. at 3-4.)

6           When plaintiff returned to Folsom State Prison after the surgery, defendants Dr.

7   Duc and Nurse Bakewell refused to provide him with a wheelchair, crutches, or a cane to help

8   him avoid putting pressure on his ankle.  Instead, they allegedly forced plaintiff to hop, limp, and

9   hobble, which caused him to miss a post-surgery follow-up appointment at U.C. Davis and

10  resulted in his ankle healing improperly.  Plaintiff alleges that he notified defendants Dr. Bal,

11  CEO Deems, Dr. Nangalama, and Warden Walker of the excruciating pain he was enduring

12  without a wheelchair, crutches, or a cane, but they too ignored his requests for help.  Plaintiff

13  alleges that he went thirteen months without an appropriate and medically-necessary assistive

14  device from defendants and now requires a second ankle surgery.  (Compl. at 4-12.)

15          On August 11, 2011, defendants moved to dismiss plaintiff's complaint for failure

16  to exhaust his administrative remedies prior to filing suit and for failure to state a cognizable

17  claim. (Doc. No. 19)  On December 15, 2011, the undersigned issued findings and

18  recommendations, recommending that the motion to dismiss for failure to exhaust administrative

19  remedies be denied and the motion to dismiss for failure to state a cognizable claim be granted in

20  part and denied in part.  (Doc. No. 35)  On January 26, 2012, the assigned District Judge adopted

21  those findings and recommendations in full, dismissed plaintiff's conspiracy claim and his claims

22  in connection with his administrative appeals insofar as those claims were based solely on

23  defendants' review and denial of inmate appeals, and ordered defendants Nurse Bakewell, Dr.

24  Bal, CEO Deems, Dr. Duc, and Dr. Nangalama to file an answer in response to plaintiff's Eighth

25  Amendment claims.  (Doc. No. 36)  Defendants timely filed an answer and discovery ensued.

26  Now pending before the court is defendants' motion for summary judgment.  (Doc. No. 50)

## SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically store information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).  When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.). See also Fed. R. Civ. P. 56(c)(1)(B).  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, . . ., is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

1  establish the existence of this factual dispute, the opposing party may not rely upon the

2  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

3  form of affidavits, and/or admissible discovery material, in support of its contention that the

4  dispute exists.  See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.  The opposing

5  party must demonstrate that the fact in contention is material, i.e., a fact that might affect the

6  outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

7  248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

8  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

9  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

10  1436 (9th Cir. 1987).

11        In the endeavor to establish the existence of a factual dispute, the opposing party

12  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

13  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

14  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

15  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

16  genuine need for trial.'"  Matsushita, 475 U.S. at 587 (citations omitted).

17        "In evaluating the evidence to determine whether there is a genuine issue of fact,"

18  the court draws "all reasonable inferences supported by the evidence in favor of the non-moving

19  party."  Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011).  It is

20  the opposing party's obligation to produce a factual predicate from which the inference may be

21  drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

22  aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing

23  party "must do more than simply show that there is some metaphysical doubt as to the material

24  facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the

25  nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation

26  omitted).

**OTHER APPLICABLE LEGAL STANDARDS**

I.  Civil Rights Act Pursuant to 42 U.S.C. § 1983

       The Civil Rights Act under which this action was filed provides as follows:

       Every person who, under color of [state law] . . . subjects, or causes
to be subjected, any citizen of the United States . . . to the
deprivation of any rights, privileges, or immunities secured by the
Constitution . . . shall be liable to the party injured in an action at
law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

(1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

meaning of  § 1983, if he does an affirmative act, participates in another's affirmative acts or

omits to perform an act which he is legally required to do that causes the deprivation of which

complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

       Moreover, supervisory personnel are generally not liable under § 1983 for the

actions of their employees under a theory of respondeat superior and, therefore, when a named

defendant holds a supervisorial position, the causal link between him and the claimed

constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862

(9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory

allegations concerning the involvement of official personnel in civil rights violations are not

sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

II.  The Eighth Amendment and Inadequate Medical Care

       The unnecessary and wanton infliction of pain constitutes cruel and unusual

punishment prohibited by the Eighth Amendment.  Whitley v. Albers, 475 U.S. 312, 319 (1986);

Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).

In order to prevail on a claim of cruel and unusual punishment, a prisoner must allege and prove

that objectively he suffered a sufficiently serious deprivation and that subjectively prison officials

acted with deliberate indifference in allowing or causing the deprivation to occur.  Wilson v.

Seiter, 501 U.S. 294, 298-99 (1991).

Where a prisoner's Eighth Amendment claims arise in the context of medical

care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence

deliberate indifference to serious medical needs."  Estelle, 429 U.S. at 106.  An Eighth

Amendment medical claim has two elements:  "the seriousness of the prisoner's medical need

and the nature of the defendant's response to that need."  McGuckin v. Smith, 974 F.2d 1050,

1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133

(9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could

result in further significant injury or the 'unnecessary and wanton infliction of pain.'"

McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104).  Indications of a serious medical

need include "the presence of a medical condition that significantly affects an individual's daily

activities."  Id. at 1059-60.  By establishing the existence of a serious medical need, a prisoner

satisfies the objective requirement for proving an Eighth Amendment violation.  Farmer v.

Brennan, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then

show that prison officials responded to the serious medical need with deliberate indifference.

Farmer, 511 U.S. at 834.  In general, deliberate indifference may be shown when prison officials

deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in

which prison officials provide medical care.  Hutchinson v. United States, 838 F.2d 390, 393-94

(9th Cir. 1988).  Before it can be said that a prisoner's civil rights have been abridged with regard

to medical care, however, "the indifference to his medical needs must be substantial.  Mere

'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."

Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at

105-06).  See also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere

1   negligence in diagnosing or treating a medical condition, without more, does not violate a

2   prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same).  Deliberate

3   indifference is "a state of mind more blameworthy than negligence" and "requires 'more than

4   ordinary lack of due care for the prisoner's interests or safety.'"  Farmer, 511 U.S. at 835

5   (quoting Whitley, 475 U.S. at 319).

6          Delays in providing medical care may manifest deliberate indifference.  Estelle,

7   429 U.S. at 104-05.  To establish a claim of deliberate indifference arising from delay in

8   providing care, a plaintiff must show that the delay was harmful.  See Berry v. Bunnell, 39 F.3d

9   1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332,

10  1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v.

11  Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  In this regard, "[a]

12  prisoner need not show his harm was substantial; however, such would provide additional

13  support for the inmate's claim that the defendant was deliberately indifferent to his needs."  Jett

14  v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).  See also McGuckin, 974 F.2d at 1060.

15         Finally, mere differences of opinion between a prisoner and prison medical staff

16  or between medical professionals as to the proper course of treatment for a medical condition do

17  not give rise to a § 1983 claim.  See Snow v. McDaniel, 681 F.3d 978, 988 (9th Cir. 2012);

18  Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v.

19  Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir.

20  1981).

21                                    **ANALYSIS**

22         Defense counsel argues, and the undersigned finds, that defendants have borne

23  their initial burden of demonstrating that there is no genuine issue of material fact with respect to

24  the adequacy of the medical care provided to plaintiff.  Specifically, the evidence submitted by

25  the defendants in support of their motion for summary judgment establishes the following.  On

26  February 9, 2009, U.C. Davis orthopedic surgeon Dr. Giza examined plaintiff for pain in his left

1   ankle.  Dr. Giza determined that plaintiff had lesions and a bone impingement in his left ankle.

2   Dr. Giza recommended surgery for plaintiff's condition to which plaintiff consented.  (Defs.'

3   SUDF 1-4, Giza Decl.)

4          On February 13, 2009, Dr. Giza performed surgery and removed lesions and bone

5   impingement from plaintiff's left ankle.  Dr. Giza approved plaintiff for full-weight bearing, so

6   plaintiff would walk after surgery to facilitate healing of the ankle.  It was within the standard of

7   care for plaintiff to walk after his ankle surgery.  Dr. Giza did not approve a wheelchair, crutches,

8   or a cane for plaintiff after his surgery.  (Defs.' SUDF 5-8, Giza Decl.)

9          After his surgery, plaintiff returned to CSP-Sacramento.  Plaintiff was prescribed

10   pain medication and scheduled for further evaluation for the following week.  On February 18,

11   2009, Dr. Giza examined plaintiff at U.C. Davis to see how his left ankle was doing.  Dr. Giza

12   determined that plaintiff's wounds were well healed and that the nerves in his lower extremity

13   were intact.  Dr. Giza recommended removal of the sutures and that plaintiff continue full-weight

14   bearing on his ankle.  Later that day at CSP-Sacramento, plaintiff's suture was scheduled for

15   removal for the following week.  On February 25, 2009, plaintiff was prescribed 5 mg of

16   Methadone twice a day for thirty days for his left ankle.  On April 13, 2009, plaintiff was

17   observed by a physician walking into the clinic.  (Defs.' SUDF 9-15, Giza Decl. & Myers Decl.

18   Ex. A 1-8.)

19          On June 1, 2009, defendant Nurse Bakewell examined plaintiff and reviewed his

20   medical record in response to his inmate appeal (SAC-10-09-10823) in which plaintiff claimed

21   that two correctional officers refused to provide him with a wheelchair for his follow-up

22   examination at U.C. Davis because he did not have a wheelchair chrono.  Plaintiff did not appear

23   to be in pain at that time, and the incisions on his left ankle had healed.  Defendant Nurse

24   Bakewell concluded that plaintiff did not need a wheelchair and denied his inmate appeal.  On

25   June 17, 2009, defendant Dr. Duc examined plaintiff and reviewed his medical record in

26   response to his inmate appeal at the second level of review.  Plaintiff showed no signs of pain at

that time, and the incisions on his ankle had healed.  Defendant Dr. Duc concluded that plaintiff

did not need a wheelchair and denied his inmate appeal.  On February 19, 2010, defendant

Warden Walker reviewed plaintiff's inmate appeal at the director's level of review.  Defendant

Warden Walker determined that defendant Nurse Bakewell and defendant Dr. Duc had examined

plaintiff and concluded that his ankle had healed.  Based on their conclusions, defendant Warden

Walker denied plaintiff's inmate appeal.  (Defs.' SUDF 16-17 & 20, Bakewell Decl., Duc Decl.

& Walker Decl.)

On September 9, 2009, defendant Nurse Bakewell examined plaintiff in response

to another inmate appeal (SAC-10-09-11890) in which plaintiff requested a wheelchair chrono

and an increase of his Methadone from 5 mg to 10 mg for pain.  That day, plaintiff walked into

the clinic without any apparent sign of pain.  In addition to not appearing to be in pain, the

incisions on plaintiff's left ankle had healed.  Defendant Nurse Bakewell concluded that plaintiff

did not need an increase of Methadone and denied his inmate appeal.  On October 23, 2009,

defendant CEO Deems reviewed plaintiff's inmate appeal at the second level of review.

Defendant CEO Deems determined that defendant Nurse Bakewell had examined plaintiff and

concluded his ankle had healed and that he was not experiencing pain that would justify an

increase in his Methadone dosage.  Based on defendant Nurse Bakewell's conclusion defendant

CEO Deems denied plaintiff's inmate appeal.  (Defs.' SUDF 16 & 19, Bakewell Decl. & Deems

Decl.)

On February 26, 2010, defendant Dr. Nangalama examined plaintiff and reviewed

his medical records in response to his inmate appeal (SAC-10-10-10368) in which plaintiff

claimed that Dr. Ali did not approve him for a cane or an increase in his pain medication.

Plaintiff showed no signs of pain, and the incisions on his ankle had healed.  Defendant Dr.

Nangalama concluded that plaintiff did not need an increase of Methadone and denied his inmate

appeal.  On March 30, 2010, defendant CEO Deems reviewed plaintiff's inmate appeal at the

second level of review.  Defendant CEO Deems determined that defendant Dr. Nangalama had

1   examined plaintiff and concluded his ankle had healed and that he was not experiencing pain that

2   would justify an increase in his Methadone dosage.  Based on defendant Dr. Nangalama's

3   conclusion defendant CEO Deems denied plaintiff's inmate appeal.  On May 25, 2010, defendant

4   Warden Walker reviewed plaintiff's inmate appeal at the director's level of review and

5   determined that defendant Dr. Nangalama and defendant Dr. Duc's responses showed that they

6   had examined plaintiff and concluded that his ankle had healed.  Based on their conclusions,

7   defendant Warden Walker denied plaintiff's inmate appeal.  (Defs.' SUDF 17, 18 & 20,

8   Nangalama Decl., Duc Decl. & Walker Decl.)

9          It is not uncommon for a patient who has had ankle surgery to experience residual

10   pain even after the ankle has healed.  When a patient has residual pain, doctors prescribe

11   medication to manage it.  Plaintiff complained of residual pain and was prescribed Methadone

12   and Naproxen.  These prescribed medications are within the standard of care to manage residual

13   pain.  The standard of care did not require CSP-Sacramento medical staff to provide plaintiff

14   with a wheelchair, crutches, or a cane.  The medical care that plaintiff received at CSP-

15   Sacramento complied with the standard of care within the medical community.  (Defs.' SUDF

16   21-26, Giza Decl, Bal Decl. & Myers Decl.)

17          Given the evidence submitted by defendants in support of the pending motion for

18   summary judgment, the burden shifts to plaintiff to establish the existence of a genuine issue of

19   material fact with respect to his inadequate medical care claims.  As noted above, on defendants'

20   motion for summary judgment, the court is required to believe plaintiff's evidence and draw all

21   reasonable inferences from the facts before the court in plaintiff's favor.  The court has reviewed

22   plaintiff's verified complaint, his opposition to defendants' motion, and the many other

23   submissions plaintiff has filed with the court.  Drawing all reasonable inferences in plaintiff's

24   favor, the court concludes that plaintiff has not submitted sufficient evidence in this action to

25   create a genuine issue of material fact with respect to his claim that defendants violated his rights

26   under the Eighth Amendment.

1    Specifically, the evidence presented by plaintiff fails to demonstrate that

2 defendants responded to plaintiff's serious medical needs[1] with deliberate indifference or acted in

3 conscious disregard of an excessive risk to plaintiff's health.  See Farmer, 511 U.S. at 834 &

4 837; Estelle, 429 U.S. at 106.  Plaintiff's opposition rests primarily on two arguments:  (1)

5 defendants should have provided him with a wheelchair, crutches, or a cane because Dr. Giza

6 told him he could weight-bear as tolerated, but he was not tolerating the pain well; and (2) Dr.

7 Giza prescribed plaintiff pain medication, but defendants prescribed him other less effective

8 medication and refused to increase the dosage strength when he requested it.  (Pl.'s Opp'n to

9 Defs.' Mot. for Summ. J. at 6-11, 15-17.)  Below, the court will address each of these arguments

10 and the evidence submitted in support thereof in turn.

11    As to plaintiff's first argument about not receiving an assistive device from

12 defendants; as discussed above, a mere difference of opinion between a prisoner and prison

13 medical staff as well as between medical professionals as to the proper course of medical care

14 does not give rise to a cognizable § 1983 claim.  See Snow, 681 F.3d at 988; Jackson, 90 F.3d at

15 332; Sanchez, 891 F.2d at 242; Franklin, 662 F.2d at 1344; see also Fleming v. Lefevere, 423 F.

16 Supp. 2d 1064, 1070 (C.D. Cal. 2006) ("Plaintiff's own opinion as to the appropriate course of

17 care does not create a triable issue of fact because he has not shown that he has any medical

18

19    [1] The parties do not dispute, and undersigned finds, that based upon the evidence
20 presented by the parties in connection with the pending motion for summary judgment a
   reasonable juror could conclude that plaintiff's ankle condition constitutes an objective, serious
   medical need.  See McGuckin, 974 F.2d at 1059-60 ("The existence of an injury that a reasonable
21 doctor or patient would find important and worthy of comment or treatment; the presence of a
   medical condition that significantly affects an individual's daily activities; or the existence of
22 chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for
   medical treatment."); see also Canell v. Bradshaw, 840 F. Supp. 1382, 1393 (D. Or. 1993) (the
23 Eighth Amendment duty to provide medical care applies "to medical conditions that may result
   in pain and suffering which serve no legitimate penological purpose.").  Specifically, plaintiff's
24 largely undisputed medical history, as well as the observations and treatment recommendations
   by the defendant medical providers as well as plaintiff's outside treating physician Dr. Giza,
25 compel the conclusion that plaintiff's medical condition, if left untreated, could result in "further
   significant injury" and the "unnecessary and wanton infliction of pain."  McGuckin, 974 F.2d at
26 1059.

training or expertise upon which to base such an opinion.").  Here, plaintiff has provided no

evidence to demonstrate that the defendants' decision not to provide him with a wheelchair,

crutches, or a cane was medically unacceptable under the circumstances or that defendants chose

their course of treatment in conscious disregard of an excessive risk to plaintiff's health.  In

contrast, defendants have submitted declarations establishing that based on medical examinations

and conclusions that plaintiff's left ankle had healed, they determined that he did not need an

assistive device.  (Bakewell Decl., Duc Decl., Nangalama Decl., Deems Decl. & Walker Decl.)

Moreover, defense counsel has submitted a declaration from Dr. Giza, plaintiff's treating

orthopedic surgeon, in which Dr. Giza declares that he specifically approved plaintiff for full-

weight bearing so that plaintiff would walk after the surgery to facilitate healing of his left ankle.

(Giza Decl.)  Moreover, Dr. Giza did not approve a wheelchair, crutches, or a cane for plaintiff

after his surgery.  (Id.)  On February 18, 2009, five days after plaintiff's surgery, Dr. Giza saw

plaintiff again and determined that plaintiff's wounds were well healed and that nerves in the left

lower extremity were intact.  (Id.)  At that time Dr. Giza recommended removal of plaintiff's

sutures and that plaintiff continue full-weight bearing on both ankles.  (Id.)  According to Dr.

Giza, the standard of care did not require prison medical staff to provide plaintiff with a

wheelchair, crutches, or a cane after his ankle surgery.  (Id.)  In this regard, the defendant medical

providers' determinations were entirely consistent with the course of treatment recommended by

plaintiff's treating orthopedic surgeon.  In short, based on the record before the court, defendants'

decision not to provide plaintiff with an assistive device did not rise to the level of deliberate

indifference in violation of the Eighth Amendment.

        As to plaintiff's second argument about not receiving the pain medication Dr.

Giza prescribed or increases in pain medication as he requested, these arguments fall outside the

scope of plaintiff's complaint.  Plaintiff's complaint centers on defendants refusal to provide him

with a wheelchair, crutches, or cane after his surgery.  At no point in his complaint does plaintiff

complain about defendants' refusal to prescribe, administer, and/or increase his pain medication.

1   (Compl. at 3-13 & Exs.)  An opposition to a motion for summary judgment is not a proper

2   vehicle for adding new claims to his complaint, and the court need not consider these arguments.

3   See Wasco Products v. Southwallx Technologies, 435 F.3d 989, 992 (9th Cir. 2006) ("Simply

4   put, summary judgment is not a procedural second chance to flesh out inadequate pleadings);

5   Brass v. County of Los Angeles, 328 F.3d 1192, 1197-98 (9th Cir. 2003) (upholding the district

6   court's finding plaintiff had waived § 1983 arguments raised for first time in summary judgment

7   motion where nothing in amended complaint suggested those arguments, and plaintiff offered no

8   excuse or justification for failure to raise them earlier); see also Williams v. Rodriguez, No. C

9   10-2715 RMW (PR), 2012 WL 1194160 at *9 (N.D. Cal. Apr. 10, 2012) (declining to consider

10   plaintiff's attempt to transform his claim against a defendant doctor from one instance of

11   cancelling a morphine prescription to a claim that the defendant doctor denied him pain

12   medication for years).

13           Even if plaintiff had complained about defendants' refusal to prescribe,

14   administer, and/or increase his pain medication, or plaintiff's complaint somehow could be

15   construed to state such a claim, again, a mere difference of opinion between a prisoner and prison

16   medical staff as well as between medical professionals as to the proper course of medical care

17   does not give rise to a cognizable § 1983 claim.  See Snow, 681 F.3d at 987.  In this case, on

18   February 13, 2009, Dr. Giza prescribed plaintiff 5 mg of Oxycodone every four hours, 500 mg of

19   Keflex every six hours, and 500 mg of Relafen, and at a follow-up appointment on May 13,

20   2009, Dr. Giza recommended that plaintiff's prescription for Oxycodone continue.  (Giza Decl.

21   & Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 41.)  However, upon plaintiff's return to the prison

22   from the hospital after surgery one Dr. Ma prescribed plaintiff Tylenol #3 every four to six hours,

23   500 mg of Naproxen, and 500 mg of Keflex.  On February 18, 2009, five days after Dr. Ma

24   issued his prescription, one Dr. Menor prescribed plaintiff 5 mg of Methadone, and on February

25   25, 2009, defendant Dr. Duc prescribed plaintiff 5 mg of Methadone HCL.  (Myers Decl. Ex. A

26   at 2 & 6-7.)  In the ensuing months and years, defendants and non-defendant medical providers

1  gradually increased the strength of plaintiff's Methadone prescription up to 50 mg.  (Pl.'s Am.

2  Opp'n to Defs.' Mot. for Summ. J. at 3 & Pl.'s Decl. at 4.)

3          As an initial matter the court notes that Dr. Ma and Dr. Menor were not named by

4  plaintiff as defendants in this action.  In addition, plaintiff does not claim that the named

5  defendants refused to prescribe him any pain medication.  Rather, plaintiff now argues that the

6  medication they prescribed was less effective than that prescribed by his surgeon, Dr. Giza.

7  However, plaintiff has come forward with no evidence to demonstrate that Dr. Ma, Dr. Menor,

8  and/or the defendants' decisions not to provide him with the precise pain medication Dr. Giza

9  prescribed and not to increase the dosage strength each time plaintiff requested it was medically

10  unacceptable under the circumstances or that defendants chose their course of treatment in

11  conscious disregard of an excessive risk to plaintiff's health.

12          In contrast, defense counsel has supported the motion for summary judgment with

13  evidence showing that the decisions regarding plaintiff's pain medication were made after

14  medical examinations and reviews of plaintiff's medical history.  Plaintiff's medical records

15  show that after plaintiff's surgery he exhibited little or no apparent signs of pain.  For example,

16  during plaintiff's follow-up appointment with Dr. Giza on February 18, 2009, plaintiff's medical

17  records indicate that he was "doing well" and had "minimal pain."  (Myers Decl. Ex. A at 4-5.)

18  Likewise, defendants and non-defendant prison medical staff observed plaintiff walking without

19  pain and without any unsteady gait or limp following his surgery.  (Bakewell Decl., Duc. Decl. &

20  Myers Decl. at 8, Pl.'s Decl. Ex. D at 19.)  Defense counsel has also submitted a declaration from

21  plaintiff's treating orthopedic surgeon in which Dr. Giza declares that the CSP-Sacramento

22  medical staff met the standard of care in treating plaintiff's ankle after surgery.  (Giza Decl.)  In

23  this regard, plaintiff's disagreement with defendants about the type and strength of his pain

24  medication does not reflect a conscious disregard of plaintiff's serious medical needs.  In short,

25  based on the record before the court, defendants' refusal to provide plaintiff with the pain

26  medication he preferred did not rise to the level of deliberate indifference in violation of the

1  Eighth Amendment.  See McGuckin, 974 F.2d 1050 (a defendant "must purposefully ignore or

2  fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to

3  be established."); see also Parlin v. Sodhi, No. 10-6120 VBF (MRW), 2012 WL 5411710 at *4

4  (C.D. Cal. Aug. 8, 2012) ("At its core, Plaintiff's claim is that he did not receive the type of

5  treatment and pain medication that he wanted when he wanted it.  His preference for stronger

6  medication – Vicodin, Tramadol, etc., – represents precisely the type of difference in medical

7  opinion between a lay prisoner and medical personnel that is insufficient to establish a

8  constitutional violation."); Tran v. Haar, No. CV 10-07740 CJC (SS), 2012 WL 37506 at *3-4

9  (C.D. Cal. Jan. 9, 2012) (plaintiff's allegations that defendants refused to prescribe "effective

10  medicine" such as Vicodin and instead prescribed Ibuprofen and Naproxen reflected a difference

11  of opinion between plaintiff and defendants as to the proper medication necessary to relieve

12  plaintiff's pain and failed to state an Eighth Amendment claim); Ruiz v. Akintola, No. CIV S-09-

13  0318 JAM GGH P, 2010 WL 1006435 at *7 (E.D. Cal. Mar. 17, 2010) (granting summary

14  judgment in favor of defendants on plaintiff's inadequate medical care claim where he presented

15  no expert evidence that the Ultram which defendants prescribed, instead of the Norco that U.C.

16  Davis physicians had recommended, was not medically warranted or reasonable), aff'd No. 10-

17  16516 (9th Cir. Nov. 2, 2011).[2]

18          Finally, the court notes that in the months and years after plaintiff's surgery he

19  continued to complain about pain in his ankle and repeatedly sought an assistive device and an

20  increase in his pain medication.  Plaintiff has submitted copies of his medical records indicating

21

22          [2] Of course, deliberate indifference can manifest when prison doctors ignore express
orders from outside treating physicians.  See Snow, 681 F.3d at 988 (non-treating, non-specialist
23  physicians may have been deliberately indifferent to prisoner's needs when they repeatedly
denied outside specialists' recommendations for hip-replacement surgery); Jett, 439 F.3d at
24  1097-98 (prison doctor may have been deliberately indifferent to a prisoner's medical needs
when he decided not to request an orthopedic consultation as the prisoner's emergency room
25  doctor had previously ordered).  However, this is not such a case.  Plaintiff's treating orthopedic
surgeon, Dr. Giza, has submitted a declaration in support of defendants' motion for summary
26  judgment clearly stating that defendants' treatment of plaintiff's ankle after surgery was within
the standard of care.

that medical staff has determined that a cane chrono would be appropriate for plaintiff.  (Pl.'s

Opp'n to Defs.' Mot. for Summ. J. at 42 & Pl.'s Decl. at 4.)  In addition, medical staff has

steadily increased plaintiff's Methadone dosage.  (Id.)  Plaintiff also contends that he now needs

a second ankle surgery.  Plaintiff points to these developments as evidence that defendants were

deliberately indifferent when they determined that he did not need an assistive device or an

increase in his Methadone strength.  However, that other doctors subsequently determined that a

cane chrono and/or an increase in plaintiff's Methadone strength were appropriate does not

necessarily compel the conclusion that the previous care provided by the defendants was

medically unacceptable.  See Sanchez, 891 F.2d at 242; see also Schafer v. Curry, No. C 08-1881

RMW (PR), 2009 WL 1562957 at *12 (N.D. Cal. June 3, 2009) (no genuine issue of material

raised simply because plaintiff presented evidence that showed defendant doctor placed

plaintiff's broken foot in a post-operative shoe, did not provide him crutches, and only provided

him with Motrin but three weeks later another doctor put a cast on plaintiff's leg, prescribed him

crutches, and authorized him for a different pain medication).  At most, in presenting evidence of

subsequent treatment plaintiff has shown either a mere difference of opinion between medical

professionals or that defendants' course of treatment may have constituted neglect or medical

malpractice.  However, the Ninth Circuit has made clear that "[w]hile poor medical treatment

will at a certain point rise to the level of a constitutional violation, mere malpractice, or even

gross negligence does not suffice."  Wood, 900 F.2d at 1234.  Moreover, plaintiff has not shown

that he needs a second surgery because defendants denied him an assistive device and refused to

increase his pain medication.  In fact, according to his medical records, he has seen Dr. Giza

again, and Dr. Giza determined that despite the first surgery plaintiff likely still has a lesion in his

ankle that is causing his symptoms.  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 34.)

       In sum, based on the record before this court, it is clear that plaintiff has received

regular medical care from defendants and non-defendant medical providers who established a

course of treatment, including pain medication, that they believed to be appropriate.  The details

1   found in plaintiff's medical records as well as the frequency of his medical visits and

2   examinations with the defendants and other health care professionals contradicts his subjective

3   belief that the defendants were deliberately indifferent to his medical needs.  Accordingly, the

4   court concludes that the defendants are entitled to summary judgment in their favor.[3]

5                                                **OTHER MATTERS**

6                  Prior to defendants filing their motion for summary judgment, plaintiff filed a

7   motion for preliminary injunctive relief asking the court to issue an order requiring the

8   defendants to provide him with a cane and to honor Dr. Giza's prescription for Oxycodone.  "The

9   proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is

10  likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of

11  preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the

12  public interest.'"  Stormans v. Selecky, 571 F.3d 960, 978 (9th Cir. 2009) (quoting Winter v.

13  Natural Res. Def. Council, 555 U.S. 7, 20 (2008)).  For the reasons discussed herein, plaintiff has

14  not established that he is likely to succeed on the merits of this case.  Accordingly, the court will

15  recommend that plaintiff's motion for preliminary injunctive relief be denied.

16                 Plaintiff has also filed an amended complaint.  Therein, plaintiff alleges that on

17  October 28, 2010, correctional officers Daye and Dhillon confiscated his walking cane and have

18  refused to renew his medical chrono.  In addition, plaintiff alleges that officers Daye and Dhillon

19  have not provided him with adequate pain medication.  Defendants have moved to strike

20  plaintiff's amended complaint on the grounds that: (1) allowing plaintiff to proceed on an

21  amended complaint at this late date would prejudice the defendants who had already filed the

22  pending motion for summary judgment; (2) plaintiff filed the amended complaint without leave

23  of the court; and (3) plaintiff's amended complaint would be futile and produce delay because

24  ───────────

25         [3]  Defense counsel also argues that defendants are entitled to summary judgment based on
      qualified immunity.  In light of the recommendation set forth herein that defendants' motion for
      summary judgment be granted on the merits of plaintiff's Eighth Amendment claims, the court

26  declines to address this alternative argument.

1   defendants Bakewell, Bal, Deems, Duc, Nangalama, and Walker are not mentioned in it.  After

2   defendants filed their motion to strike, plaintiff filed a second amended complaint containing

3   allegations against correctional officers Daye and Dhillon as well as his allegations against

4   defendants Bakewell, Bal, Deems, Duc, Nangalama, and Walker.

5          At this stage of the litigation, plaintiff is only permitted to amend his pleading

6   with the opposing parties' consent or the court's leave.  See Fed. R. Civ. P. 15(a).  In this case,

7   plaintiff has obtained neither defendants' consent nor the court's leave.  Moreover, even if

8   plaintiff had filed motions for leave to amend with his proposed amended complaints, his

9   motions would be untimely.  According to the court's discovery and scheduling order, the parties

10  were required to file all pretrial motions on or before August 31, 2012.  (Order Filed Mar. 1,

11  2012)  Plaintiff did not file his amended complaints until September 17, 2012, and October 5,

12  2012.  Nor has plaintiff filed a motion for leave to act out of time or demonstrated good cause to

13  modify the scheduling order in this case.  See Johnson v. Mammoth Re-creations, 975 F.2d 604,

14  608 (9th Cir. 1992).  Accordingly, the court will recommend striking plaintiff's proposed

15  amended complaints.

16         Finally, plaintiff has filed a motion pursuant to Federal Rule of Civil Procedure

17  56(e) in which he asks the court to delay ruling on defendants' motion for summary judgment

18  because he has asked his family to "go online" and find official medical expert opinions that are

19  contrary to Dr. Giza's.  Alternatively, plaintiff requests that the court appoint a medical expert

20  and/or counsel on his behalf.  The court had not ruled on plaintiff's motion to delay ruling when

21  he subsequently filed two motions for reconsideration.  In his motions for reconsideration,

22  plaintiff was clearly under the mistaken impression that the court had already ruled in favor of

23  the defendants on their pending motion for summary judgment.  Plaintiff complained in the

24  motions for reconsideration that the court had not ruled on his Rule 56(e) motion nor given him a

25  chance to submit expert opinions to contradict Dr. Giza's declaration filed in support of

26  defendants' motion for summary judgment.  He attached to his motions for reconsideration

1    copies of online materials from "experts" purportedly concerning whether or not patients need

2    assistive devices after ankle surgery and asked the court to reconsider its "ruling" on defendants'

3    motion for summary judgment.

4            Until now, the court has not issued any findings and recommendations or rulings

5    on defendants' motion for summary judgment.  Moreover, plaintiff's "expert" evidence falls far

6    short of contradicting the evidence defendants have filed in support of their motion for summary

7    judgment.  Plaintiff's "expert" evidence consists of general descriptions about ankle arthroscopy

8    from an emedicinehealth website.  The authors of the descriptions are doctors who are not

9    familiar with plaintiff or plaintiff's condition.  Moreover, there is nothing in the materials

10   provided by plaintiff which describes anything specific to him or his condition.  In this regard,

11   plaintiff's expert "evidence" does not raise a genuine issue of material fact precluding summary

12   judgment in defendants' favor.

13           As to plaintiff's request that the court appoint a medical expert on his behalf,

14   although the court granted plaintiff leave to proceed in forma pauperis, "'the expenditure of

15   public funds [on behalf of an indigent litigant] is proper only when authorized by Congress.'"

16   Tedder v. Odel, 890 F.2d 210, 211 (9th Cir. 1989) (quoting United States v. MacCollom, 426

17   U.S. 317, 321 (1976).  The expenditure of public funds for an expert witness is not authorized by

18   the in forma pauperis statute or any other statute.  See 28 U.S.C. § 1915.

19           Likewise, as to plaintiff's request that the court appoint him counsel, the United

20   States Supreme Court has ruled that district courts lack authority to require counsel to represent

21   indigent prisoners in § 1983 cases.  Mallard v. United States Dist. Court, 490 U.S. 296, 298

22   (1989).  In certain exceptional circumstances, the district court may request the voluntary

23   assistance of counsel pursuant to 28 U.S.C. § 1915(e)(1).  Terrell v. Brewer, 935 F.2d 1015, 1017

24   (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990).

25           The test for exceptional circumstances requires the court to evaluate the plaintiff's

26   likelihood of success on the merits and the ability of the plaintiff to articulate his claims pro se in

1   light of the complexity of the legal issues involved.  See Wilborn v. Escalderon, 789 F.2d 1328,

2   1331 (9th Cir. 1986); Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983).  Circumstances

3   common to most prisoners, such as lack of legal education and limited law library access, do not

4   establish exceptional circumstances that would warrant a request for voluntary assistance of

5   counsel.  Here, the court does not find the required exceptional circumstances.  For the reasons

6   discussed herein, plaintiff has not shown that he is likely to succeed on the merits of this case.

7           Accordingly, the court will deny plaintiff's motion to delay ruling on defendants'

8   motion for summary judgment, his motion for appointment of an expert and/or counsel, and his

9   premature motions for reconsideration.

10                                   **CONCLUSION**

11          IT IS HEREBY ORDERED that:

12          1.  Plaintiff's motion pursuant to Rule 56(e) and motion for appointment of an

13   expert or counsel (Doc. No. 60) are denied; and

14          2.  Plaintiff's motions for reconsideration (Doc. Nos. 68 & 69) are denied.

15          IT IS HEREBY RECOMMENDED that:

16          1.  Defendants' motion for summary judgment (Doc. No. 50) be granted;

17          2.  Plaintiff's motion for injunctive relief (Doc. No. 48) be denied;

18          3.  Defendants' motion to strike (Doc. No. 53) be granted;

19          4.  Plaintiff's amended complaints (Doc. Nos. 52 & 58) be stricken; and

20          5.  This action be closed.

21          These findings and recommendations are submitted to the United States District

22   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

23   days after being served with these findings and recommendations, any party may file written

24   objections with the court and serve a copy on all parties.  Such a document should be captioned

25   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

26   shall be served and filed within seven days after service of the objections.  The parties are

1    advised that failure to file objections within the specified time may waive the right to appeal the

2    District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3    DATED: June 19, 2013.

4

5                                         _____

6                                         DALE A. DROZD
                                          UNITED STATES MAGISTRATE JUDGE

7    DAD:9
     woma2778.57(2)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26